My name is Hara Jacobs. I'm with the firm Ballard Spahr. I represent the cross-appellant, the American Board of Internal Medicine, which is known as ABIM. And what I'd like to do this morning is to address two main points today. Do you want to reserve any time for rebuttal? Oh, yes, thank you. Can I reserve five minutes for rebuttal? That's fine. What I'd like to do is address two main points concerning the district court's errors that occurred in calculating ABIM's attorney's fees, both of which require reversal. First is the district court's threshold error in failing to calculate a Lodestar. And the second is the impermissible factors that the district court applied to purport to justify a very low fee award to ABIM. First, in terms of failing to calculate a Lodestar, the district court itself expressly acknowledged the requirement to calculate a Lodestar on page 4 of its opinion. I believe it even referred to the Lodestar as the guiding light. Dr. Von Mueller also acknowledged the requirement to calculate a Lodestar in her brief on appeal at pages 13 and 14. Well, don't you agree that even though a Lodestar wasn't actually calculated here, that under the Copyright Act, it's not necessary to have a Lodestar in determining the attorney fees? No, Your Honor. I would not agree with that because I think it's very clear, particularly after the Supreme Court's opinion in Purdue, which is cited in our brief and was issued in 2010, that regardless of what statute we're talking about, if it has a fee-shifting provision, you have to calculate a Lodestar. And this circuit has also said, I mean, this circuit pioneered the Lodestar in lending. Well, the TPEG case said under the Copyright Act in awarding attorney fees, it's not necessary to do it with a Lodestar. I am familiar with the TPEG case from the First Circuit, which came down fairly recently. I don't believe, first of all, the TPEG case, I don't believe, follows Purdue. Second, the TPEG case involved an award of attorney's fees to a defendant. It did not involve an award of attorney's fees to a plaintiff. It certainly didn't involve an award of attorney's fees in a case where the defendant was found to be a willful infringer. Well, the Brinkman case also, the fifth, there's nothing in the Supreme Court, but it seems the circuits have stated that under the Copyright Act, the district court can use Lodestar, but it's not required, it can use other methods. And the Ninth Circuit has done it in a non-presidential case, Cordes, K-U-R-T-I-S. So is it necessary to have, if the district court didn't want to use the, or was going to but didn't, is that an absolute error? Yes, the district court's failure to calculate a Lodestar is an error because the entire reason for calculating a Lodestar is that it roughly approximates an actual fee, it permits meaningful review, and very importantly, you get reasonably predictable results. But you calculated the Lodestar, did you not, in the, or your side, when you made the presentation to the judge here, right? Yes, we did. And then you decreased it so it was down to about 42 percent or something like that? A-B-I-M decided to request less money than it was entitled to, that is correct. I mean, what your argument sounds like is, look, the judge here did a, you know, sort of a generic seat-of-the-pants, I think there's an $80,000 judgment, I'm going to give you half of that in attorney's fees, and that's it. And you're saying that that isn't the way one goes about calculating. You may end up with $40,000 in the end. We don't know. Well, Your Honor, two points on that. Yes, I agree completely that the seat-of-the-pants, I'll give you half the award, I'll give you half, I'll give you in attorney's fees half of what the jury awarded is exactly what this court said. In Washington, you can't do, the district court cannot adjust counsel fees to maintain a certain ratio between the fees and damages. Was that a copyright act? That was a civil rights case, wasn't it? It was not a copyright act case. Doesn't that highlight, that highlights, it seems to me, the fulcrum upon which our decision turns, namely, must the attorney's fees provision in the Copyright Act be read analogously to the civil rights statutes? If the answer to that is yes, you win. If the answer to that is no, you may win or may lose. Isn't the Civil Rights Act really qualitatively different? Before you answer that, can you just answer my question? Do you understand my question? It was a little convoluted. I believe I understand your question, and here's the thing. I agree that the Civil Rights Act and the Copyright Act do not have identical purposes. It would be silly for me to stand here before you and to say otherwise. But here is what they have that is absolutely the same. They both have a provision that entitles a prevailing party to a reasonable attorney's fee. Section 505 of the Copyright Act says a court may award a reasonable attorney's fee. That section does not say that the court may award an arbitrary $40,000 or $50,000 bonus. All right, but now you're two levels below where I want to get to, so let's go back for a minute. If it's a civil rights case, this is an easy vacate and remand because they didn't do what we've said and other courts have said, calculate the lodestar, et cetera, et cetera. So if this is not a civil rights, if it's not required to be analyzed under that, then what authority do you have to indicate that a lodestar calculation was required in this case? First, the district court itself acknowledged that a lodestar was required. Maybe it misspoke. It's two pages. You can't argue that there was a waiver and the district court is now bound by some stray comment that it may have made. What case support do you have to indicate that a lodestar must be calculated in a Copyright Act case? The reason why a lodestar should be calculated in a copyright case exactly like it should be calculated in a civil rights case or in a trademark case or in a patent case, it is because today it has widely been regarded, including by the Supreme Court, as the best way to calculate reasonable attorney's fee because it roughly approximates the fee, it allows for meaningful judicial review because you know what the court did below, and it brings about reasonably predictable results. I put it on the flip side. I'm sorry. I put it on the flip side that there is no reason why the standard for a copyright case in terms of calculating attorney's fees should be any different. The purpose of the Copyright Act is to encourage creative works for the benefit of the public. That is exactly what ABIM does. Its exams are for the benefit of the public because the public relies on the outcome of those exams to select physicians. This is about protecting the public for the benefit of the public. There's a lot of cases in which lodestar comes at the back end. It's a cross-check. And there are certain types of cases where lodestar comes at the beginning, such as civil rights cases. But let's go back to Judge Hardiman's question. How is, I guess it's 505 of the Copyright Act, how is that the same as or different than civil rights acts, the Civil Rights Act on which the Washington decision was based? Well, to the best of my understanding... I mean, as a matter of policy. To the best of my understanding, the language is basically the same. The court may award a reasonable attorney's fee. If a reasonable attorney's fee is the goal, the Supreme Court and this circuit that pioneered the lodestar... But it starts off, the court may, so that's obviously... Right, so... District courts have significant discretion. Right, and in this case, the court already decided to award ABIM attorney's fees. That is a separate order that isn't even up on appeal before this court. That is a totally separate decision that Judge Joyner issued in which he said, yes, given that the jury found that Dr. Von Mueller was a willful infringer and to promote compensation and deterrence, ABIM is entitled to a reasonable attorney fee. That's a totally separate order. And then we have the order before us right now. Well, you're correct that this can't be affirmed because there was... The district court did not go forward on the calculating the fee in the method in which you have indicated. But if it's not necessary to have a lodestar, why can't this case be affirmed under the Fogarty and Leib factors where no lodestar was calculated and that was affirmed based on factors other than lodestar calculations? And the reason for that is that the factors that the district court applied to justify the low fee award, those factors are impermissible. Under Fogarty and Leib, they're impermissible? Well, let me go through the factors and discuss them one by one. First is the first factor is damages. The factor of damages, the jury's award of damages, is really what is at stake in the case. What are the stakes in the case? In this case, the damages awarded by the jury do not reflect the enormous stakes in the case. For ABIM, the stakes were incredibly high. It was protecting its most valuable property, the exam that it gives to measure whether a physician has the knowledge, the skills, and the judgment to be board certified. And for Dr. Von Mueller, the stakes for her were enormously high. She wanted to... She lost her license. Your Honor, she didn't lose her license. Board certification is not a license to practice medicine. Well, lost a valuable board certification. The ability to specialize. No, she can still practice gastroenterology. She's just not board certified. But for her, and she said this is in the record, she wanted to clear her name. She wanted to punish ABIM, which was clear from the 11 counterclaims that she brought against ABIM, and she lost on all of them. So the stakes in this case are very high. To focus an award of attorney's fees just on the damages, there are many, many cases that have said you shouldn't do that. But let's go back to Judge Hardiman's first question that he asked you that I'm not sure you answered. If we conclude that failure to calculate a lodestar isn't fatal to a district court's fee decision under the Copyright Act, what happens to your position? The district court's decision is still reversed because given the factors that were applied, first of all, the facts that were applied to some of the factors are clearly erroneous. And I would submit that it is absolutely an abuse of discretion. Okay, so then what you're saying is it's an abuse of discretion. It is an abuse of discretion. And I'd like to know... Well, I don't know if we want to hear it on rebuttal or not. What are those? What are those clearly erroneous findings of fact by the district court and what other evidence of abuse of discretion do you offer us? Okay. Another factor that the court applied I was addressing before, that the district court expressly used the amount of damages the jury awarded. Can we call that the proportionality principle? The proportionality is... But where's the case law that says, again, I know this is a big assumption because you disagree with it, but assume that we're not in the realm of Civil Rights Act attorney's fees awards, what case law says that the district court cannot consider proportionality in fashioning a just and fair attorney's fees award? There are two cases that were decided by Judge Posner in the Seventh Circuit which explicitly state that where the jury gives a low amount of damages, that's actually a reason, that is a stronger reason to award attorney's fees. What statutes were at issue in those cases? That's copyright. They're both copyright cases. They're both copyright cases. Well, it comes to the back door through the measure of success in the litigation, even though you can't have proportionality between the fee and the award, but it's a question of whether or not the litigation was successful. Well, but in this case, the litigation was overwhelmingly successful because damages, the way that you damage is one piece of that. And here, the jury found that the defendant was a willful infringer. ABIM prevailed on 13 of the 14 claims in the case. Dr. Von Mueller was also seeking millions of dollars in damages because she claimed that she wasn't a cheater and that she wasn't an infringer, and she lost. ABIM won on all of that, and ABIM did obtain $91,000. ABIM did obtain $91,000 for infringement of 50 questions. I do see the red light, but I really do want to go back to you. We'll get you back on rebuttal. Oh, you'll get me back on rebuttal. You've got five minutes.  I'll terminate or I'll be back. And you might even be up longer than that. Okay. Thank you. Mr. Ellis. Good afternoon, Your Honors. My name is Glenn Ellis from Laser Freehold, and I have the privilege of representing Dr. Sarah Von Mueller in this appeal. The district court didn't decide. What's the argument that district court did a gestalt theory here? It just feels right to do half. Don't we need more than that? When you look at, for example, we've got some tough cases here where Evans v. Port Authority, which is a third-circuit case from 2001, Judge Mansman wrote that we have to do a line-by-line analysis, which just seems to be an awfully tough standard. Right, Your Honor. And this is a copyright case where there is no case that says the judge has to do a lodestar. Well, did the judge actually do a lodestar here, or did he do a lodestar? Well, not being in the judge's chambers, what I believe happened is the judge issued his order saying, this is the kind of case I'm going to give attorneys fees. And in a footnote he said, we're going to do a lodestar. Counsel, be conscious of the fact that you have a good faith duty of excluding redundant and excessive billing and submit it to me. And what the judge got was 200 pages of unclear, ambiguous, vague, duplicative billing. But you're in the third circuit, and the third circuit, again, back in the Evans case, says that you cannot make findings of reasonableness based on a generalized sense of appropriateness. And it looks like the judge here made a, at least based on the record that we have, looks like a generalized sense of what is appropriate. And aren't we bound by our precedent? Well, Your Honor, it appears that the court, in his opinion, cited specific examples. And I believe he said there are two numerous examples. He cited a lot of examples that show that there was duplication, but one could make a very easy repose to that and say that, yes, but they discounted substantially the amount of fees requested initially, or at least what their lodestar showed by what came out to 43% is what they actually requested. Well, Your Honor, it's their burden to submit the necessary and factual information to support their lodestar. They did, and they discounted it. So they did it on their own. So it would seem to say that there was duplication. That is really kind of off the table because they took it off the table. Well, it's not clear, other than saying we're going to seek less, we're going to cut 42% off, why they cut the 42% off. But even if they say we're going to cut the 42% off. Did they ask for 43% or did they discount it by 43%? I think they discounted it by 42%. They said this is our number. No, I thought the average was 42. This was 43, but roughly it's about the same. The point is they discounted it significantly in terms of what they requested. Even knowing that, the court, looking at the information provided to it, found that it was still unable, after reviewing all 200 pages, to find that the lodestar, the reasonableness of the hours expended, were in fact reasonable. So the court turned the page. Knowing that it's not bound by deciding the case on lodestar, the court turned the page. All the more reason to have a correct lodestar. It's sort of like in sentencing. I don't know if you do any criminal work, but in sentencing, before you get to the third step, the actual sentence, you have to have a correct calculation of what the sentencing guidelines are. Here, it seems that you need at least a correct calculation so that we know what we're dealing with, apples versus apples, with regard to the amount of time that exists for purposes of determining a proper fee award, if one is proper at all. In this court, the district court, who heard all of the evidence, who handled all of the cases, because this was one in a number of cases that were brought against doctors by ABIM, that court is in the best position, was in the best position, to look at this lodestar request and realize it was far in excess. But don't you have to agree that the award had nothing to do with the lodestar? I mean, the judge was explicit about it. The judge said, I'm going to award attorney's fees equal to half the verdict. I mean, we don't have to speculate as to what the judge did here. The judge tied this attorney's fee award to a proportionality analysis that was one half the verdict. Isn't that true? After the judge found that the evidence submitted didn't meet their burden, the judge then did go about reaching the number a different way. And he lamented, or noted at least, that what they were requesting was 22% excuse me, the verdict they earned was only 22% of the fees that they were asking for. Right. So again, what drove this was, as Judge Ambrose suggested, a feel, a sense of what is equitable and just under the circumstances. I don't think the judge simply halved the amount without thinking about the case. There is no doubt about the judge thought about the case. As we say where I grew up, ain't no doubt about it. But the question is, how do you go about it in a way in which it can be reviewed by somebody who decides to take an appeal? Well, in thinking about the case, the judge applied the factors from this court and looked at the complexity of the case. The fact that there were multiple cases involved here which would provide judicial efficiency to ABIM. And also at the success of the case. If he didn't use a lodestar, and obviously he did not use a lodestar in this case, even though he said he was going to. But he did use a lodestar. Tell me what was the standard that he applied in determining what would be a reasonable attorney's fee. There's got to be a standard so that we can review that standard that he applied. That's a $64 question. In Lib's case, this court says that there are factors the court should consider. And those are the factors the court considered. In specific, the court considered the complexity of the case. The court considered the fact that there were other cases. The court considered the deterrence factor. And the court considered the lack of actual malice. The court considered the degree of success. Now, ABIM claims this was a great success. That's not what he said in the opinion that he gave. That's not what he articulated as a reason for the fee. That's good. A law that you're taking off there. But that's not what he said was the basis for the fee award. Well, those are the things that he talked about. He talked about how the fact that there had been this award and the fact that this person had been put out of business would deter other doctors from doing what she had done. He talked about how there were multiple cases which would have provided efficiency to ABIM. He talked about how most of the discovery was gained through other individuals. Well, he mentioned this just as he mentioned the Lodestar. As Judge Ambrose said, the $64 question is what standard, if he didn't use the Lodestar standard, what did he use? Well, Your Honor, what I'm saying is he used the Lib's factors. Which at the end of that opinion, before the court moved on, the court said clearly that the district court is not bound to give an attorney's fee, that it's discretionary. And that if the district court finds one is not necessary, then one doesn't have to be given. And in specific, the court states that if the district court concludes that fees are proper, it should then consider the relative simplicity of the defense. The judge did that here. And whether the retention of out-of-town counsel with the accompanying increase was necessary, that's not applicable here. But the sum requested is large, and we note that it may be disproportionate to the amount at state and excessive in light of the plaintiff's resources. The judge considered the proportionality. I'm out. The problem you have is on page 4, and on footnote 2, the judge acknowledges that the Lodestar is presumed to be reasonable, and in the footnote, it has many virtues. And then it goes on, and you need to calculate the Lodestar, and then the court doesn't do it. I mean, that's like a slam dunk. The court doesn't do it because it wasn't provided the information it needed by ABIM. No, no. They did provide it, but they didn't buy a lot of it. And in the end, you may win. But we're talking about process here. No, I understand that, Your Honor. I agree that the court, in its original order, granting attorney's fees in its mind was going to apply a Lodestar. In reviewing the documents provided by ABIM, the court obviously shifts gears and decides not to use a Lodestar, and is not bound to use a Lodestar. Back up. Put yourself in our position. We've got precedent that says that Lodestar is very important, so important that our circuit probably, maybe unlike any other, says that you need to go line by line. I mean, that's a toughie. The court says, yep, got to do a Lodestar. And there's important reasons, important virtues as to why you should do a Lodestar, and then doesn't do a Lodestar. As a matter of process, what do you want us to do? Well, Your Honor. Do you want us to do a Gestalt theory as well? No, Your Honor. But I think that the court was right in saying that here the difference, this is a copyright case. And this copyright, under the Copyright Act, it's not the same as the Civil Rights Act or a class action. Time out. You need to answer my question. I think the court should affirm, because the court here didn't merely have it. You're writing this opinion, so we're saying that, you know what, even though this circuit requires Lodestar, even though it requires a deep, hard look at Lodestar, the fact that it, and the court here acknowledges that, the fact that it wasn't done, it's okay. Because, and in the future, the next case, when you're on the other side, don't worry about it. It's okay. You've got to somehow, every now and then, put yourself in our position as to what we would do and how we're not screwing it up for the next case down the road. You're not doing that. I think, Your Honor, the court either has to take the hard line of saying that in all of these kinds of cases where there's a fee-shifting provision, a Lodestar must be done, and the court must go through all 200 pages and eliminate the ones that it finds to be unreasonable. Or the court has to say, this is a Copyright Act case, and in the Copyright Act, the court has tremendous discretion to decide what the amount is due. You want us to say that the Lodestar doesn't have to be calculated in copyright cases. And if it does, you lose, right? Well, Your Honor, if it does, then yes. Our original, below, when we objected to the reasonableness of the fees, we actually said either the court should deny the fee petition or send the ABIM back to recalculate it. The court decided to say, well, the fees are unreasonable, but I can look, and looking to page 11 of the court's opinion, the court says, in arriving at the appropriate award under the circumstances presented by this case, we consider those factors outlined by the Third Circuit. And in that, from page 11 to page 13, the court enunciates and enumerates why he reached that number. Which is not a Lodestar approach. It's a totality of the circumstances. It is, Your Honor. It's looking at the case, having lived with the case, knowing, having looked through all 200 pages of the bills, and knowing what may happen in terms of the deterrence factor, in terms of what did happen to this person, and deciding that it, in fact, is an appropriate number. Now, you know what, it may be an appropriate number. As I said before, this may go back, and this judge may do exactly the same thing, and it may be, quite likely, may be the right result. No problem. But there is a process that you have to go through. And that's what we're talking about here. We're not saying that this was, the $40,000 is ultimately the wrong number. And I realize your position as an advocate is to try to get it affirmed in the here and now. But we have to think about what happens down the road. And I don't have an answer for you, and you're not supplying me one, as to why we should ignore the process that we normally have in place, in most cases, with respect to the awarding of fees. Well, I think the Court said in other cases that have looked beyond the Lodestar for deciding these kind of copyright cases. And here, you have to remember that the purpose of the Copyright Act is not to protect. For example, one argument you could have made is, perhaps, is that a, you know what, Lodestar shouldn't be up front. It should be just a cross-check, as in some other instances it is. It's just a cross-check for, to be sure that you've arrived at a number that makes some sense. Well, that is what Lodestar is, and that is what this Court said. The Court looked at the fees and said, well, you're requesting your award and damages as 22% of the fee of your Lodestar. Your Lodestar is obviously unreasonable. And in the Court – Not in a civil rights case. I mean, the cases are legion where – Not in a civil rights case. In civil rights cases, people get $100, and they get $50,000 in legal fees. Right. Your Honor, but the public policy driving a civil rights case is different than the public policy driving a copyright act case. Right, which is all another way of saying you need to convince us to apply a different standard in copyright cases. Then we do that. And that different standard is going to give trial judges substantially more latitude to fashion just and equitable fee awards than they would otherwise have in those civil rights cases. Correct? Yes, Your Honor, and I think that is a standard because the copyright act, the main purpose of the copyright act is not to protect authors. The main objective of the copyright act is to allow for progress in science. And here, if you look at what happened here, this plaintiff was – this defendant was accused of copying 77 questions. At the end of the day, she was only found to have infringed 21 if you accept ABIM's interpretation of the jury's verdict sheet, which obviously Dr. Von Muehler believes – I'm not sure arguing she only cheated on 21 questions really helps you. It's not a matter of cheating only on 21 questions. It's a matter that all those other questions that she was alleged to have infringed on, they now are part of the public domain. There has to be a place for people who are putting together review courses. The people that are putting together review courses for doctors are former doctors who have sat for this exam. And if they're faced with the choice of, oh, maybe the question I'm crafting is an ABIM question and I'm going to be hit with hundreds of thousands of dollars of attorney's fees, then they're not going to do that. So is your argument that one should take 21 over 77 and that should be the proportion that we do, so it should be a proportionality test? Well, no, Your Honor, because that's – It can't be. It can't be that. But what you have here is you have a jury coming out down the middle and Judge Posner talked about toss-up copyright cases in the assessment technologies case. And you have a jury coming down the middle saying, look, half of the questions are – we'll give you half of the questions, but half of the questions she's accused of aren't infringed. Now, wait a minute. Time out. It isn't a toss-up case. What this says is if you look back later, an individual was found by a jury to have violated the Copyright Act with respect to 21 questions on a board specialization certification exam, period. That's the way it will come down. That's history. The fact that they argued there was more and that the jury found less, the historical fact is that this person was found to have violated the copyright with respect to 21 questions. Your Honor, with respect to 21, which is less than 50 percent of what she was alleged to have done. But you just said yourself that the path you're leading down doesn't help us. Well, I understand it doesn't help in setting a standard for the Copyright Act to do attorney's fees. So what standard would you ask us to apply here? I think that the standard that should be applied is the discretion of the court to look at the factors listed. I understand that. But what standard should we apply in assessing whether the court has properly used its discretion? It's an abuse of discretion standard. No, no, no. If we're looking at an abuse of discretion standard, what factors should we take into account in order to decide whether there has been an abuse of discretion? Well, the factors should be the award, the damages award. It should be the complexity of the case. Where do you start? The damages award? Where do you start? Well, you could start at the damages award. Then you move on to the complexity of the case. You move on to the deterrence. After all, Copyright Act is about deterring other infringers. Those are the kinds of factors that have already been laid out by this court in its various subpoenas. Was this a complex case? No, Your Honor. The district court found that it wasn't a complex case. There were five witnesses. There were 11,000 pages of documents. And there were no experts, according to ABIM, even though Dr. Von Muehle had argued that one of their witnesses was technically an expert.